X FILED          ____ LODGED
____ RECEIVED    ____ COPY

JUN 1 7 2008

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR PUBLIC DISCLOSURE

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | NO. CR08-0598 PHX·JAT(EW) |
|---|---|
| Plaintiff, | **INDICTMENT** |
| v. | |
| 1. Felix B. Guzman, Sr.; (Counts 1-37) | VIO: |
| 2. Felix B. Guzman, Jr; (Counts 1-37) | 18 U.S.C. § 1343 (Wire Fraud) Counts 1-27 |
| 3. Fabian Guzman; (Counts 1-37) | 18 U.S.C. § 1349 (Conspiracy) Count 28 |
| 4. Maria Guzman; (Counts 1-37) | 18 U.S.C. § 1957 (Transactional Money Laundering) Counts 29-36 |
| 5. Carl Rex Olson; (Counts 1-37) | 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) Count 37 |
| 6. Andrew Benjamin; (Counts 1-37) | |
| 7. Christopher Lee Pirwitz; (Counts 1-37) | 18 U.S.C. § 2 (Aiding and Abetting) Counts 1-37 |
| 8. Mary Elizabeth Ortega Vasquez; (Counts 1-37) | 18 U.S.C. § 982(a)(1) and (a)(2) 18 U.S.C. § 981(a)(1)(A) 21 U.S.C. § 853(p) 28 U.S.C. § 2461 (Forfeiture Allegations) |
| 9. Ana Valdez; (Counts 1-37) | |
| 10. Rodney Alan Rohde; (Counts 1-37) | |
| Defendants. | |

THE GRAND JURY CHARGES:

## **INTRODUCTION:**

At all times material to this indictment:

### **Cash Back Scheme**

1.     In a "cash back" scheme, the investor (or home buyer) offers to purchase a property for more than the asking price, and submits a contract to the seller for the inflated price, with the agreement that the buyer will receive the excess cash back over the seller's true asking price. The seller agrees to the sale because they are receiving their full asking price. Often a real estate agent is involved in the transaction and they are aware that the selling price has been inflated.

2.     Often a "straw buyer" is used to facilitate the "cash back" scheme. A "straw buyer" is someone recruited by the investor to take out a mortgage in their name and purchase a house in their name. The "straw buyer" would not live in the house nor be responsible for the mortgage payments. In return for their services, the "straw buyer" would sometimes be paid a fee.

3.     The investor often prepares a Uniform Loan Application, also known as Form 1003, for the "straw buyer." A lender uses this form to record relevant financial information about an applicant who applies for a mortgage. The investor facilitating the cash back scheme falsely represents the buyer's assets and income, conceals mortgages and other debts, and misrepresents sources of intended down-payments and intent to occupy the properties as primary residences, all in an effort to qualify the "straw buyer" for a mortgage. In signing the loan application, at the direction of the investor, the "straw buyer" acknowledges that "the information provided in the application is true and correct" and that "any intentional or negligent misrepresentation(s) contained in this application may result in civil liability and/or criminal penalties..."

2

4.      A title or escrow company is used to hold the subject property for safekeeping under the trust of a neutral third party (escrow agent) pending satisfaction of a contractual contingency or condition. Once the conditions are met, the escrow agent will deliver the property to the party prescribed by the contract.

5.      In preparing to facilitate a real estate purchase transaction, an escrow agent is used to submit to lenders a preliminary HUD-1 known as a "Pre-audit". The Pre-audit HUD-1 lists fees and payments to be made in connection with the proposed loan and is reviewed by the lender. If the lender approves the Pre-audit HUD-1, funds are wired to the title or escrow company to disburse accordingly. The lender instructions specify that the escrow agent must notify the lender of any material changes to the HUD-1 and receive the lender's approval prior to fund disbursement. After receiving the loan documents and funds from the lender and facilitating the buyer and seller signing, escrow agents prepare a "Final" HUD-1 wherein details of the actual fund disbursements are listed for the lender's records.

6.      The "cash back" scheme puts the loan at greater risk as the loan originates with negative equity in the property. For that reason, lenders do not allow a buyer to receive cash at closing of the origination of a loan.

## RESPA

7.      Among the programs established and regulated by the U.S. Department of Housing and Urban Development ("HUD") is the Real Estate Settlement Procedures Act ("RESPA"), found in Title 12, United States Code, Section 2617. The regulation established that HUD shall:

> Develop and prescribe a standard form for the statement of settlement costs which shall be used as the standard real estate settlement form in all transactions in the United States which involve federally related mortgage loans. Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement.

3

8.     The Secretary of HUD established that the "Settlement Statement," often referred to as the "HUD-1", would be the standard form used for real estate transactions in the United States. The above incorporates many conventional lenders as they are being insured by the Federal Deposit Insured Corporation ("FDIC"). RESPA was enacted to protect all parties involved in residential real estate purchases and specifically prohibits "kickbacks". The regulation established that:

> *No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.*

"Settlement Services" are defined as:

> *any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or* ***appraisals***, *pest and fungus inspections, services rendered by a* ***real estate agent*** *or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of* ***loan applications, loan processing, and the underwriting and funding of loans***), *and the handling of the* ***processing, and closing or settlement.*** (Emphasis added.)

## Defendants

9.     For a portion of time between February 1, 2005 and to July 31, 2006, Defendant FELIX WALTER GUZMAN ("GUZMAN SR") was employed as a Real Estate officer with AVI Realty ("AVI"), a subsidiary of Century 21 Real Estate, Phoenix, AZ.

10.     Defendant MARIA GUZMAN ("MARIA") was married to GUZMAN SR. Her employment is unknown.

11.     Defendant FELIX BENJAMIN GUZMAN ("GUZMAN JR") worked with his father at AVI, in Phoenix, AZ.

12.     Defendant FABIAN GUZMAN ("FABIAN") worked as a loan officer with Dynasty Mortgage, in Phoenix, AZ.

13.     Defendant CARL REX OLSON ("OLSON") worked as an owner/operator of Management Concepts, preparing tax returns in Phoenix, Arizona.

4

14.     Defendant MARY ELIZABETH ORTEGA VASQUEZ ("VASQUEZ") worked as an escrow officer with Camelback Title Agency ("Camelback"), in Phoenix, AZ.

15.     Defendant ANDREW BENJAMIN ("BENJAMIN") worked in marketing and was co-owner of Family Home Lending, in Tempe, AZ.

16.     Defendant CHRISTOPHER PIRWITZ ("PIRWITZ") worked as a loan officer for Family Home Lending, in Tempe, AZ.

17.     Defendant ANA VALDEZ ("VALDEZ"), whose employment was unknown, was a listed buyer for two properties.

18.     Defendant RODNEY ROHDE ("ROHDE") was employed as a loan officer for Dynasty Mortgage in Phoenix, AZ.

## Title Agency

19.     Camelback Title Agency ("Camelback") was the designated escrow company for all twenty-seven (27) properties purchased in the scheme alleged below. The files relative to property sales conducted by GUZMAN SR, GUZMAN JR and FABIAN included a "Purchase Contract Addendum" for each loan facilitating the purchase of the twenty-seven (27) properties, giving instructions to the escrow officer to pay the buyer thousands of dollars at close of escrow.

## Counts 1-27

### Wire Fraud

### [Title 18 U.S.C. § 1343]

20.     Paragraphs 1 through 19 of the indictment are incorporated by reference and re-alleged as if fully set forth herein.

21.     On or about the dates set forth below, within the District of Arizona and elsewhere, GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, ROHDE and others known and unknown to the grand jury,

5

knowingly devised and intended to devise a scheme and artifice to defraud lenders, as identified below, and to obtain money from lenders by means of false and fraudulent pretenses, representations, and promises and by intentional concealment and omission of material facts.

### The Scheme and Artifice to Defraud

22.    It was part of the scheme and artifice to defraud that the defendants GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, ROHDE and others, sought to purchase real properties with mortgage loan applications, falsely representing the buyer's assets, income, concealing mortgages and other debts, misrepresenting sources of intended down-payments and intent to occupy the properties as primary residences, and falsifying HUD-1s to conceal who actually received settlement proceeds.

### Execution of the Scheme by Wire Communications

23.    From on or about  February 15, 2005 through June 21, 2006, within the District of Arizona, and elsewhere, GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, and ROHDE, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce signals and sounds, that is, banking wire transfers, from the identified financial accounts and amounts below,  to the identified recipient in the District of Arizona, the monies being funds to purchase the real property listed below:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 2/15/05 | $465,916.82 from Deutsche Bank Trust of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18021 W San Juan Ave, Litchfield Park, AZ. |
| 2 | 2/16/05 | $440,576.53 from Deutsche Bank Trust of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18017 W Georgia Ct, Litchfield Park, AZ. |

| Count | Date | Wire Transmission |
|---|---|---|
| 3 | 2/17/05 | $375,788.98 from Deutsche Bank Trust of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8355 W Briles Rd, Peoria, AZ |
| 4 | 2/17/05 | $433,435.60 from Washington Mutual Bank of San Antonio, TX, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18005 W San Miguel Ave, Litchfield Park, AZ. |
| 5 | 3/11/05 | $474,471.67 from North Fork Bank of Mattituck, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18028 W Colter St, Litchfield Park, AZ. |
| 6 | 3/23/05 | $454,186.83 from Washington Mutual Bank of San Antonio, TX, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 17993 W Colter St, Litchfield Park, AZ. |
| 7 | 8/8/05 | $477,600 from National City Bank of Cleveland, OH, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8348 W Maya Dr, Peoria, AZ. |
| 8 | 8/10/05 | $455,503.88 from Deutsche Bank Trust of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8333 W Maya Dr, Peoria, AZ. |
| 9 | 8/31/05 | $475,529.35 from Deutsche Bank Trust of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8338 W Maya Dr, Peoria, AZ. |
| 10 | 9/1/05 | $437,617.13 from HSBC Bank USA of Buffalo, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8369 W Bajada Rd, Peoria, AZ. |
| 11 | 9/27/05 | $399,773.74 from JP Morgan Chase Bank of Tampa, FL, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 17538 W Desert Sage Dr, Goodyear, AZ. |
| 12 | 9/28/05 | $477,977.17 from Citibank NA of Englewood Cliffs, NJ, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8355 W Briles Rd, Peoria, AZ. |
| 13 | 9/29/05 | $395,242.66 from UBS Bank of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 3927 E Simpson Rd, Gilbert, AZ. |
| 14 | 10/6/05 | $396,416.23 from National City Bank of Indiana of Cleveland, OH, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18668 W Lodge Dr, Goodyear, AZ. |
| 15 | 10/14/05 | $637,481.14 from Washington Mutual Bank of San Antonio, TX, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 4743 S Star Canyon Dr, Gilbert, AZ. |

7

| Count | Date | Wire Transmission |
|---|---|---|
| 16 | 10/24/05 | $481,001.22 from Citibank NA of Englewood Cliffs, NJ, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 26885 N 83rd Dr, Peoria, AZ. |
| 17 | 1/10/06 | $594,006.77 from Sky Bank of Indianapolis, IN, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18020 W San Miguel, Litchfield Park, AZ. |
| 18 | 1/17/06 | $419,998.33 from UBS Bank of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 1414 E Bridgeport Parkway, Gilbert, AZ. |
| 19 | 1/23/06 | $747,406.29 from Wachovia Bank of Winston-Salem, NC, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 12560 146th Way, Scottsdale, AZ. |
| 20 | 2/15/06 | $486,080 from Washington Mutual Bank of San Antonio, TX, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 845 W Sycamore Ct, Litchfield Park, AZ. |
| 21 | 2/21/06 | $759,338.34 from Wachovia Bank of Winston-Salem, NC, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 12443 N 145th Way, Scottsdale, AZ. |
| 22 | 3/6/06 | $363,137.25 from The Bank Of New York of Oriskany, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 15329 N 159th Dr, Surprise, AZ. |
| 23 | 3/27/06 | $542,817.67 from JPMorgan Chase Bank of Tampa, FL, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8355 W Briles Rd, Peoria, AZ. |
| 24 | 3/31/06 | $738,264.56 from Washington Mutual Bank of San Antonio, TX, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 17933 W Montebello Ave, Litchfield Park, AZ. |
| 25 | 4/12/06 | $615,364.36 from Fremont Investment & Loan of Brea, CA, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 17933 W Colter St, Litchfield Park, AZ. |
| 26 | 5/26/06 | $539,702.13 from The Bank Of New York, NY, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 8333 W Maya Dr, Peoria, AZ. |
| 27 | 6/21/06 | $684,566.85 from Lehman Brothers Bank, FSB of Wilmington, DE, to Camelback Title account at Johnson Bank in Phoenix, AZ, for financing of 18017 W Georgia Ct, Litchfield Park, AZ. |

All in violation of Title 18, United States Code, Sections 1343 and 2; Pinkerton v. United States, 328 U.S. 640 (1946).

8

## Count 28

### Conspiracy to Commit Wire  Fraud

### [Title 18 U.S.C. § 1349]

24.     Paragraphs 1-19 and 21-23 of the indictment are incorporated by reference and re-alleged as if fully set forth herein.

25.     From a time unknown to the grand jury but at least as early as January 1, 2005 through July 31, 2006, in the District of Arizona, GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, ROHDE and others, known and unknown to the grand jury, knowingly combined, conspired and agreed with each other and with others known and unknown to the grand jury to commit certain offenses against the United States, to wit: Wire Fraud, in violation of Title 18, United States Code, Section 1343.

### The Purpose of the Conspiracy

26.     The purpose of the conspiracy was as follows:

     a.     To locate properties for sale, typically with fair market values over $500,000.

     b.     To use an appraisal that substantially inflated the fair market value of the property in order to obtain a higher loan amount based on the appraisal.

     c.     To find buyers to purchase the properties, typically multiple properties for each buyer.

     d.     To enable buyers to qualify for loan amounts by falsifying wage verifications.

     e.     To enable defendants GUZMAN SR, GUZMAN JR, and FABIAN to receive money for assisting with the acquisition and sale of the properties.

### Means and Methods of the Conspiracy

27.     It was part of the conspiracy that GUZMAN SR and GUZMAN JR would recruit potential buyers to purchase multiple investment properties. The scheme would be explained to potential buyers in the following way:

9

a.    GUZMAN SR and GUZMAN JR would find multiple properties for investors to purchase. These properties were to be specified to the lenders as owner-occupied properties and not investment properties, each typically with a fair market value of over $500,000.

b.    GUZMAN JR often explained to the potential purchasers that his brother, FABIAN, was a loan officer who could initiate loans for the selected property. In order to buy multiple owner-occupied properties, FABIAN sent loan applications for each property to different lenders at the same time, so that no single lender would be aware that the buyer was in the process of purchasing multiple homes.

c.    At the property closings, the bulk of the proceeds resulting from the fraudulent appraisal ($15,000 to $255,693) was then funneled back to the buyers, who would then pay "kickbacks" to GUZMAN SR and GUZMAN JR. The buyer paid the kickback to GUZMAN JR either in the form of cash, cashier's check, or a wire from the title company.

e.    GUZMAN JR and GUZMAN SR recruited buyers and purchased properties themselves in at least 27 property transactions that involved the "cash back" scheme. The amounts loaned for the 27 property transactions totaled $17,264,000.

28.    VASQUEZ and another individual working on her behalf served as escrow agents for all 27 of the real estate purchase transactions in the scheme. GUZMAN SR and GUZMAN JR provided VASQUEZ and the co-conspirator with the addenda dictating the "cash back" amounts.

29.    Real estate purchase transactions in the scheme include the following:

| Trans action # | Date of Sale | Address | Buyer | Home Price | "Cash Back" Amount |
|---|---|---|---|---|---|
| 1 | 2/16/05 | 18021 W. San Juan Ave. Litchfield Park, AZ | Felix Guzman | $585,000 | $45,000 |
| 2 | 2/17/05 | 8355 W. Briles Rd. Peoria, AZ | Monica Mark | $475,000 | $50,000 |

10

| Transaction # | Date of Sale | Address | Buyer | Home Price | "Cash Back" Amount |
|---|---|---|---|---|---|
| 3 | 2/17/05 | 18005 W. San Miguel Litchfield Park, AZ | Monica Mark | $545,000 | $50,000 |
| 4 | 2/17/05 | 18017 W. Georgia Ct. Litchfield Park, AZ | Felix Guzman | $555,000 | $15,000 |
| 5 | 3/11/05 | 18028 W. Colter St. Litchfield Park, AZ | Rodney Rohde | $595,000 | $55,000 |
| 6 | 3/25/05 | 17933 W. Colter Litchfield Park, AZ | Felix Guzman | $570,000 | $54,600 |
| 7 | 8/8/05 | 8348 W. Maya Dr. Peoria, AZ | Jennifer Pirwitz | $597,000 | $80,403 |
| 8 | 8/9/05 | 8333 W. Maya Peoria, AZ | Maria Guzman | $575,000 | $80,167 |
| 9 | 8/31/05 | 8369 W. Bajada Rd. Peoria, AZ | Andrew Benjamin | $550,000 | $65,015 |
| 10 | 9/10/05 | 8355 W. Briles Rd. Peoria, AZ | Maria Guzman | $600,000 | $99,650 |
| 11 | 9/10/05 | 8338 W. Maya Dr. Peoria, AZ | Jennifer Pirwitz | $597,000 | $52,001 |
| 12 | 9/20/05 | 3927 E. Simpson Rd. Gilbert, AZ | Daniel Cincera | $492,000 | $49,381 |
| 13 | 9/26/05 | 18668 W. Lodge Dr. Goodyear, AZ | Andrew Benjamin | $500,000 | $69,385 |
| 14 | 9/29/05 | 17538 W. Desert Sage Dr. Goodyear, AZ | Daniel Cincera | $500,000 | $66,584 |
| 15 | 10/13/05 | 4743 S. Star Canyon Dr. Gilbert, AZ | Gregory Gray | $820,000 | $70,000 |
| 16 | 10/24/05 | 26885 N. 83rd Dr. Peoria, AZ | Andrew Benjamin | $605,000 | $53,900 |
| 17 | 1/10/06 | 18020 W. San Miguel Ave Litchfield Park, AZ | Brenda Miller | $740,000 | $80,000 |
| 18 | 1/15/06 | 1414 E. Bridgeport Pkwy. Gilbert, AZ | Rachel Crook | $530,000 | $50,000 |
| 19 | 2/9/06 | 12560 146th Way Scottsdale, AZ | Felix Guzman | $943,000 | $121,000 |

| Trans action # | Date of Sale | Address | Buyer | Home Price | "Cash Back" Amount |
|---|---|---|---|---|---|
| 20 | 2/9/06 | 12443 N. 145th Way Scottsdale, AZ | Ryan Farhat | $945,000 | $100,000 |
| 21 | 2/16/06 | 845 W. Sycamore Ct. Litchfield Park, AZ | Preston Hunter | $620,000 | $100,900 |
| 22 | 2/28/06 | 8355 W. Briles Rd. Peoria, AZ | Preston Hunter | $670,000 | $58,074 |
| 23 | 3/7/06 | 15329 N. 159th Dr. Surprise, AZ | Preston Hunter | $450,000 | $40,864 |
| 24 | 3/15/06 | 17933 W. Montebello Ave Litchfield Park, AZ | Maria Guzman | $915,000 | $122,000 |
| 25 | 4/13/06 | 17933 W. Colter Litchfield Park, AZ | Pedro Quirino | $770,000 | $179,699 |
| 26 | 5/26/06 | 8333 W. Maya Peoria, Az | Ana Valdez | $670,000 | $70,995 |
| 27 | 6/21/06 | 18017 W. Georgia Ct. Litchfield Park, AZ | Ana Valdez | $850,000 | $255,693 |
| | | | **Totals** | **$17,264,000** | **$2,135,311** |

30.     Several of the above properties are listed twice because they were sold twice as part of the scheme, enabling GUZMAN SR and GUZMAN JR to remove their family name from the loans, and additional cash was secured during the subsequent sales through the use of other entities.

## Overt Acts

31.     In furtherance of the above-referenced conspiracy and to effect the objectives of the conspiracy, the defendants and other persons did perform and cause to be performed the following overt acts, among others:

a.     On January 7, 2005, VASQUEZ failed to send an Addendum to the Residential Real Estate Purchase Contract to the lender for the property located at 8355 W. Briles Road, Peoria, AZ, which reflected that the "Seller [was] to credit buyer $50,000 at COE for decorating allowance."

12

1    b.    On or about February 2, 2005, FABIAN, as loan officer, signed a Uniform

2  Residential Loan Application for property located at 8355 W. Briles Road, Peoria, AZ

3  containing false information about the mortgagee's employment and earnings.

4    c.    On February 12, 2005, GUZMAN SR signed a Uniform Residential Loan

5  Application for the property located at 18021 W. San Juan Ave., Litchfield Park, AZ which

6  contained information falsely representing an intent to occupy the property as a primary

7  residence.

8    d.    On July 14, 2005, Jennifer Pirwitz signed a Uniform Residential Loan

9  Application for the property at 8348 W. Maya Drive, Peoria, AZ which contained false

10  employment and wage information.

11    e.    On August 2, 2005, OLSON incorporated Management Concepts Exchange

12  ("MCE") in Arizona.  OLSON opened an MCE bank account at the request of GUZMAN

13  SR and GUZMAN JR.  When properties sold, GUZMAN SR or GUZMAN JR caused "cash

14  back" money to be wired to the MCE bank account.  Upon GUZMAN SR's or GUZMAN

15  JR's instructions, OLSON subsequently wired the monies on to different accounts.  OLSON

16  received $400 each time he performed a wire transfer transaction for GUZMAN SR and

17  GUZMAN JR.

18

19    f.    On August 25, 2005, BENJAMIN signed a Uniform Residential Loan

20  Application for the property located at 8369 W. Bajada Road, Peoria, AZ that falsely stated

21  his intent to occupy the home  as his  primary residence.

22    g.    On or about December 14, 2005, PIRWITZ, as loan officer, signed a Uniform

23  Residential Loan Application for the property  at 1414 E. Bridgeport Pkwy, Gilbert, AZ that

24  falsely inflated the applicant's income.

25    h.    On March 28, 2006, ROHDE, as loan officer, signed a Uniform Residential

26  Loan Application for  property at 17933 W. Montebello Ave., Litchfield Park, AZ, which

27  contained false employment and wage information for MARIA, the buyer.

28

i.      On March 29, 2006, MARIA signed a Uniform Residential Loan Application for property at 17933 W. Montebello Ave., Litchfield Park, AZ, which contained false employment and wage information.

j.      On May 16, 2006, VALDEZ signed a Uniform Residential Loan Application for property at 8333 W. Maya Drive, Peoria, AZ, which contained false employment and wage information.

k.      In February 2006, GUZMAN JR opened a business checking account in the name of Platinum Six Investments at Bank of America, account # XXXXXX5637, for the purpose of negotiating and depositing funds from real estate transactions involved in the scheme.

All in violation of Title 18 U.S.C. Sections 1349 and 2.

## Counts 29-36

### Engaging in an Illegal Monetary Transaction Greater Than $10,000.00
### [Title 18 U.S.C. § 1957]

32.      Paragraphs 1-19, 21-23, and 25-31 of the indictment are incorporated by reference and re-alleged as if fully set forth herein.

33.      On or about the dates set forth below, within the District of Arizona and elsewhere, defendants GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, and ROHDE through their shell corporations, Management Concepts 1031 Exchange, AZ Staging and Construction, Platinum Six Investments, and others known and unknown to the grand jury, did knowingly engage, and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate or foreign commerce, in criminally-derived property of a value greater than $10,000.00, that is, the negotiation of the checks and wire transfers identified below which were the direct result of "cash back" transactions associated with inflated real estate purchases in the amounts set forth below, from property having been derived from a specified

14

unlawful activity, that is:  Wire Fraud in violation of Title 18, United States Code, Section 1343:

| Count | Date | Monetary Transaction |
|---|---|---|
| 29 | 2/18/05 | Negotiation of check number 180001690 for $45,000.00 from the financing of 18021 W San Juan Ave, Litchfield Park, AZ. |
| 30 | 8/8/05 | Wire Transfer for $80,403.39 from the financing of 8348 W Maya Dr, Peoria, AZ. |
| 31 | 10/13/05 | Negotiation of check number 180009930 for $99,650.86 from the financing of 8355 W Briles Rd, Peoria, AZ. |
| 32 | 2/15/06 | Wire Transfer for $85,000.00 from the financing of 845 W Sycamore Ct, Litchfield Park, AZ. |
| 33 | 2/23/06 | Wire Transfer for $100,000.00 from the financing of 12443 N 145th Way, Scottsdale, AZ. |
| 34 | 4/13/06 | Wire Transfer for $179,699.52 from the financing of 17993 W Colter St, Litchfield Park, AZ. |
| 35 | 5/30/06 | Wire Transfer for $70,995.33 from the financing of 8333 W Maya Dr, Peoria, AZ. |
| 36 | 6/23/06 | Wire Transfer for $255,693.27 from the financing of 18017 W Georgia Ct, Litchfield Park, AZ. |

All in violation of Title 18, United States Code, Sections 1957 and 2; Pinkerton v. United States, 328 U.S. 640 (1946).

## Count 37

### Conspiracy to Commit Money Laundering

### [18 U.S.C. § 1956(h)]

34.     Paragraphs 1-19, 21-23, 25-31 and 33 of the indictment are incorporated by reference and re-alleged as if fully set forth herein.

35.     From a time unknown to the grand jury but at least as early as January 1, 2005 through July 31, 2006, in the District of Arizona, GUZMAN SR, GUZMAN JR, FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, ROHDE and others known and

1  unknown to the grand jury, did knowingly and willfully conspire and agree together, with

2  each other and others, to commit the following offenses against the United States:

3  ## Objects of the Conspiracy

4  a.    Promotional money laundering in violation of Title 18, United States Code, §

5  1956(a)(1)(A)(i).

6  b.    Concealment money laundering in violation of Title 18, United States Code,

7  §1956(a)(1)(B)(i).

8  c.    Transactional money laundering in violation of Title 18, United States Code,

9  §1957(a).

10  ## Manner and Means of the Conspiracy

11  36.    The manner and means employed by defendants GUZMAN SR, GUZMAN JR,

12  FABIAN, MARIA, OLSON, BENJAMIN, PIRWITZ, VASQUEZ, VALDEZ, ROHDE, and

13  others, to effect the objects of the conspiracy, were as follows:

14  a.    The defendants knew that the money and funds received from the sale of

15  residential properties represented the proceeds of unlawful activities; specifically violations

16  of 18 U.S.C. § 1343 (Wire Fraud).

17  b.    After money and funds were received from the specified unlawful activities,

18  the money and funds were routinely deposited into bank accounts, or withdrawn from bank

19  accounts of the various entities and individuals.  Checks were written against those bank

20  accounts and used to pay the expenses of carrying on the activities of the entities and

21  individuals, such as payments for commissions, kickbacks and purchases of additional

22  properties.

23  c.    Knowing that the property involved in financial transactions represented the

24  proceeds of some form of unlawful activity, the defendants knowingly conducted and

25  attempted to conduct financial transactions through interstate commerce, which in fact

26  involved the proceeds of specified unlawful activity, that is, Wire Fraud in violation of 18

27  U.S.C. § 1343, knowing that the transaction was designed in whole or in part to conceal and

1  disguise the nature, the location, the source, the ownership, and the control of the proceeds

2  of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  This was done

3  during the conspiracy by wiring money to an LLC that was incorporated in the name of

4  OLSON rather than GUZMAN SR and GUZMAN JR.  OLSON would then send GUZMAN

5  SR and GUZMAN JR monies via wire.

6      d.     After the money and funds were received from the criminally-derived activities

7  (wire fraud), the money and funds were routinely deposited into bank accounts, or withdrawn

8  from bank accounts of the various entities and individuals.  Funds from these accounts were

9  used to engage in monetary transactions in amounts greater than $10,000.00.

10      All in violation of Title 18 U.S.C. Sections 1956(h) and 2.

11  **Forfeiture Allegation**

12  37.    As a result of committing one or more of the wire fraud offenses alleged in Counts

13  One (1) through Twenty-Eight (28) of this Indictment, defendants GUZMAN SR, GUZMAN

14  JR, FABIAN, OLSON, MARIA, VASQUEZ, PIRWITZ, BENJAMIN, VALDEZ, and

15  ROHDE shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1)(D), any property

16  constituting, or derived from, proceeds the said defendants obtained directly or indirectly, as

17  a result of the said violations.

18

19  38.    As a result of committing one or more of the money laundering offenses alleged in

20  Counts Twenty-Nine (29) through Thirty-Seven (37) of this Indictment, defendants

21  GUZMAN SR, GUZMAN JR, FABIAN, OLSON, MARIA, VASQUEZ, PIRWITZ,

22  BENJAMIN, VALDEZ, and ROHDE shall forfeit to the United States pursuant to: 1) 18

23  U.S.C. § 981(a)(1)(A) and 28 U.S.C. § 2461 any property, real or personal, which constitutes

24  or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1956 and 1957,

25  including, but not limited to, $4,000,000.00 in United States currency; and 2) any property,

26  real or personal, involved in such offense, or any property traceable to such property.

27  39.    Cash Proceeds: The government will seek a judgment for the sum of approximately

28  $4,000,000.00 in U.S. Currency and all interest and proceeds traceable thereto, in that such

17

1  sum in aggregate constitutes the proceeds derived from the criminal violations, for which the

2  defendants who are convicted of one or more of said offenses shall be jointly and severally

3  liable.

4      40.    If any of the above-described forfeitable property, as a result of any act or omission

5  of the defendants:

6          (1)  cannot be located upon the exercise of due diligence;

7          (2)  has been transferred or sold to, or deposited with, a third person;

8          (3)  has been placed beyond the jurisdiction of the Court;

9          (4)  has been substantially diminished in value; or

10          (5)  has been commingled with other property which cannot be

11             subdivided without difficulty;

12  it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any

13  other property of said defendants up to the value of the above forfeitable property, including

14  but not limited to all property, both real and personal, owned by the defendants.

15      All in violation of Title 18, United States Code, §§ 981(a)(1)(A), 982(a)(1) and (a)(2)

16  and 1343, and Title 28, United States Code, § 2461.

17

18

19                           A TRUE BILL

20

21

22                           /s/

                         FOREPERSON OF THE GRAND JURY

23                           Date: June 17, 2008

24  DIANE J. HUMETEWA

25  United States Attorney
   District of Arizona

26

27    /s/
  KEVIN M. RAPP

28  Assistant U.S. Attorney